UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
THERESA WOODS,

                Plaintiff,

   -against-                    **FINDINGS OF FACT AND
                                                 CONCLUSIONS OF LAW**

THE CITY OF NEW YORK,                14-5866 (FB)
NEW YORK CITY TRANSIT
AUTHORITY, METROPOLITAN
TRANSIT AUTHORITY, DAVID DUNN
(Shield 586), upon information and belief a
member of the New York City Transit
Authority and/or the Metropolitan Transit
Authority Police Department, DARRYL
WILLIAMS (Shield 619), upon
information and belief a member of the
New York City Transit Authority and/or
the Metropolitan Transit Authority Police
Department, ALMA OLIVER (Shield
605), upon information and belief a
member of the New York City Transit
Authority and/or the Metropolitan Transit
Authority Police Department,

                Defendants.
------------------------------------------------------x

*Appearances:*
*For the Plaintiff*                           *For the Defendant*
MICHAEL F. KREMINS               DANIEL CHIU
Raskin & Kremins, LLP                GABRIELLA D. PALENCIA
160 Broadway                                   New York City Transit Authority
New York, New York 10038         130 Livingston Street, Room 1229n
                                                 Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

Theresa Woods ("Woods") brings this excessive force claim against Metropolitan Transit Authority ("MTA") employee Alma Oliver ("Oliver") under 42 U.S.C. § 1983.[1] The liability portion of the case was tried before the Court without a jury on September 26, 2016. In accordance with Federal Rule of Civil Procedure 52(a), the following are the Court's combined findings of fact and conclusions of law.

# I

Most of the relevant details are undisputed. On the morning of October 4, 2013, Woods commuted to work on an MTA bus. She entered the bus wearing headphones and "inserted her Metrocard to pay [the] fare." Trial Tr. 61. She sat on the bus for approximately five minutes before a transit officer, David Dunn ("Dunn"), ordered her to get off because she did not pay her fare. Woods disagreed, explaining that she did indeed use her Metrocard. At that point, Oliver, who was also riding the bus, approached Woods and echoed Dunn's demand to get off the bus. Woods responded, "if you need me to get off this bus, I will get off the bus, but you are not going to stand here and humiliate me on a public bus over $2.50." *Id.* at 64.

---

[1] Woods initially brought her § 1983 excessive force claim, as well as state tort claims of assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence, against the City of New York, the New York City Transit Authority, the MTA, David Dunn, Darryl Williams, and Alma Oliver. The City of New York and the New York City Transit Authority were dismissed before trial with no objections. *See* Order Dismissing the City of New York (May 28, 2015); *see also* Order Dismissing the New York City Transit Authority (September 25, 2016). At the conclusion of the trial - with the parties' consent - the Court dismissed the MTA, Dunn, and Williams, as well as the state tort claims, leaving only the § 1983 excessive force claim against Oliver for judicial resolution.

2

When the bus arrived at the next stop, Woods, Oliver, Dunn, and Darryl Williams ("Williams"), another transit employee, exited the bus. Dunn asked Woods for her ID and said he was going to issue her a summons. Woods remained by the bus stop and looked for her ID while Dunn began writing the summons. Woods and Oliver dispute whether Oliver was yelling at Woods at that time, but both agree that at some point Woods turned to Oliver and said, "your mother." *Id.* at 67. Both also agree that Oliver took offense to this comment, telling Woods that her mother is "dead." *Id.*

The parties' dispositive factual dispute regarding liability is whether, after Woods insulted Oliver's mother, Oliver hit Woods in the head.

## II

Woods' witness Yesenia Vidal ("Vidal") testified that she did not know Woods before the incident, was with friends at the bus stop, observed some of what had occurred, and approached Woods at the scene with a note telling her that she "recorded" some of the incident with her mobile phone. *Id.* at 30. Vidal also testified that she saw Oliver "[take] off her bag and coat," *id.* at 27, and "put her hand up . . . trying to get [Woods]," *id.* at 29. She never saw whether Oliver hit Woods. *See id.* at 31.[2]

Woods testified that she complied with the MTA officers' demands to exit the bus,

---

[2] The video was introduced into evidence, *see* Ex. E, but only showed the parties near the bus before any of the controverted events occurred; nor did it capture any of the verbal communications.

3

provide ID, and remain at the location while Dunn issued a summons, but that after she said to Oliver "your mother," Oliver "swung out of her coat," ran towards her "swinging," *id.* at 67, and then "punch[ed her] on [the right] side of her head," *id.* at 68. Woods also testified that she filed a Civilian Complaint that same day, and that two days later she went to the hospital complaining of "headaches [that] got worse over the weekend." *Id.* at 100. Both the Civilian Complaint and the hospital record were placed in evidence. *See* Ex. C (Civilian Complaint); Ex. 20 (hospital record). The Civilian Complaint is a detailed account that was consistent with Wood's trial testimony. The hospital record states that her "symptoms likely represent[ed] mild concussion," and she was "treated with Toradol 60 mg IM and Robaxin 750 mg PO." Ex. 20 at unmarked page 13.

Williams - Oliver's fellow transit officer at the MTA - testified, before he was dismissed as a co-defendant, that he "[did not] remember [Oliver] taking off her jacket and she did not swing at [Woods]." Trial Tr. 53. He acknowledged, however, that although Woods used "abusive words," *id.* at 47, she did get off the bus as requested, looked for her ID to give the officers, and remained there while Dunn wrote the summons.

Oliver testified that she "never struck [Woods]," and "never cursed her out." *Id.* at 108. She did acknowledge, however, that she was not happy when Woods insulted her mother. *See id.* at 119.

### III

Williams' and Oliver's testimony cannot be reconciled with Vidal's and Woods'; therefore, the Court must make the difficult decision to determine which account is more credible. The Court is constrained to find in Woods' favor. That Vidal – the only disinterested witness – was sufficiently animated from her observations to come to Woods' aid, and testified that Oliver took off her jacket and made threatening movements with her arms, lends credibility to Woods' version of the events. The Court is further persuaded by the specificity of Woods' testimony, her detailed Civilian Complaint report on the very same day that the incident occurred – consistent with her trial testimony – and the hospital diagnosis that she had "likely" suffered a "mild concussion." The Court thus finds that although Woods complied with the MTA officers' demands to exit the bus, attempted to provide ID, and remained at the location while Dunn issued a summons, Oliver punched her on the head after Woods, in a pique of anger, had said "your mother."

## IV

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Excessive force claims are brought under the Fourth Amendment when the force is incident to governmental search and seizure, *see Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) ("The Fourth Amendment protects against the use of excessive force by police officers in carrying out an arrest."), under the Eight Amendment when the force is inflicted in the context of prison confinement, *see Hudson*

*v. McMillian*, 503 U.S. 1 (1992), and under the Fourteenth Amendment when neither the Fourth Amendment nor Eighth Amendment applies, *see Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 253 (2d Cir. 2001) ("individuals possess a Fourteenth Amendment substantive due process right 'in the non-seizure, non-prisoner context' to be free from excessive force employed by government actors acting under the color of government authority . . . .").

In her complaint, Woods does not specify the constitutional amendment under which she asserts her § 1983 claim. The Eighth Amendment's prohibition on excessive force as cruel and unusual punishment does not apply because Woods was not in prison when Oliver hit her. And while the Fourteenth Amendment's prohibition on excessive force as a violation of substantive due process seems to fit because Oliver is a government actor who struck a private citizen, an excessive force claim should only be analyzed under the Fourteenth Amendment "in that narrow area . . . [of] the non-seizure, non-prisoner context[,]" *Rodriguez v. Phillips*, 66 F.3d 470, 477 (2d Cir. 1995)*,* such as in *Johnson*, 239 F.3d at 249, in which a teacher struck a student. *See also Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998) ("[E]xcessive force used by officers arresting suspects implicates the Fourth Amendment's prohibition on unreasonable seizures, rather than the Fourteenth Amendment's guarantee of substantive due process.").

The Fourth Amendment applies "when [an] officer, by means of physical force or show of authority, . . . in some way restrain[s] the liberty of a citizen' . . . . To explain when a

sufficient 'show of authority' effects restraint, the Supreme Court has relied on a totality-of-the-circumstances test, asking whether a reasonable person would believe that he was 'not free to leave.'" *Salmon v. Blesser*, 802 F.3d 249, 252 (2d Cir. 2015) (quoting *Terry v. Ohio*, 392 U.S. 1 (1968); quoting also *INS v. Delgado*, 466 U.S. 210, 215 (1984)). Here, the MTA officers demanded that Woods exit the bus so that they could investigate the situation, and she was not free to leave while the officers were issuing her a summons. This Court has held that detention while issuing a summons constitutes a seizure. *See Vasquez v. Pampena*, 2009 WL 1373591, at *2 (E.D.N.Y. May 18, 2009) (an officer's orders to show ID and to stay put while issuing a summons constituted a seizure).

Thus, because Woods interaction with Oliver and the other MTA officers occurred at the time of an "investigatory stop of a free citizen," *Graham*, 490 U.S. at 394, when Woods' liberty was restrained, this case falls under the purview of the Fourth Amendment. *See also Poe v. Leonard*, 282 F.3d 123, 136 (2d Cir. 2002) (the Fourth Amendment is a proper source of a plaintiff's constitutional right when "objectionable conduct occurred [within] a criminal investigation or other form of governmental investigation or activity").

Under the Fourth Amendment, "[a]pplication of force is excessive when it is more than is necessary under the circumstances." *Brown v. City of New York*, 2013 WL 491926, at *10 (S.D.N.Y. 2013) (*citing Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003)). "Not every push or shove" constitutes excessive force; rather, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Graham*, 490 U.S. at 397-98 (internal quotations omitted). "A determination of

7

reasonableness under the Fourth Amendment 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Kerman v. City of New York*, 261 F.3d 229, 239 (2d Cit. 2001) (quoting *Graham*, 490 U.S. at 396).

In this case, there was no countervailing governmental interest requiring Oliver to use force against Woods; there is no evidence suggesting that the MTA officers had any difficulty getting Woods off the bus or issuing her a summons.

Oliver clearly reacted to Woods' perceived insult of her mother; thus, striking her in the head was personal and vindictive. The subjective thoughts and feelings of officers are irrelevant to an excessive force analysis under the Fourth Amendment. *See Brown v. City of New York*, 798 F.3d 94, 100-01 n.10 (2d Cir. 2015) ("The Court also made clear that the standard is one of objective reasonableness, and the officer's state of mind, whether evil or benign, is not relevant . . . [I]t is not relevant whether the officers thought the amount of force used was really necessary or were provoked to use that amount of force because of the abusive language they contend [the plaintiff] directed at them."). Thus, considering that Woods posed no threat to officer safety and was not resisting the MTA officers' demands, the Court finds that the striking of Woods by Oliver was objectively unreasonable and, therefore, excessive.[3]

---

[3] Even if this were not a Fourth Amendment seizure, Woods would undoubtedly prevail under the Fourteenth Amendment. The excessive force analyses under the Fourth and Fourteenth Amendments are much the same because both balance the extent of the force with the state actor's need to use force. *See Johnson*, 239 F.3d at 253 ("[W]hether force is excessive depends as much upon the need for force as the amount of force used."); *see also Harrell v. County of Nassau*, 2013 WL 5439137, at *6 (E.D.N.Y. Sept. 27, 2013) (considering "the need for the application of force, the

The Court is mindful that Officer Oliver is not an inanimate object and it is understandable that as a human being with emotions and feelings she would take umbrage at Woods' admitted inappropriate and inexcusable offensive language, obviously spoken in the heat of anger. But, as difficult as it might be to control her emotions, as a trained law enforcement officer she simply could not strike Woods. *See Brown,* 798 F.3d at 100-01 n.10 (officers' subjective provocation by "abusive language" does not justify use of force).

## IV

The Clerk of the Court will fix a date for the trial of damages.

**SO ORDERED**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 25, 2016

---

relationship between the need and the amount of force used, the extent of the injury inflicted and the reason for the use of force" when analyzing Fourteenth Amendment excessive force claims). For the same reason that Woods meets the Fourth Amendment excessive force standard - because there was no reason for her to be punched – so too would she meet the Fourteenth Amendment excessive force standard.